UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TONY HICKSON, LARRY VILLA, and CHRISTOPHER WILKINS, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>KEANE GROUP HOLDINGS, LLC; KEANE FRAC TX, LLC; KEANE FRAC, LP; KEANE FRAC GP LLC; and KEANE FRAC ND, LLC;<br><br>Defendants. | No: 4:16-cv-03734 |

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.  This lawsuit seeks to recover overtime compensation for Plaintiffs and their similarly situated co-workers who held the positions of QSHE Coordinator, Wireline Supervisor, Wireline Supervisor 2, Site Supervisor 2,[1] and all other similar salaried workers (collectively, "Salaried Workers") - who work or have worked for Keane Group Holdings, LLC; Keane Frac TX, LLC; Keane Frac, LP; Keane Frac GP LLC; and Keane Frac ND, LLC (collectively "Keane") nationwide.

2.  Started in 1973, Keane offers completion services to some of the largest oil & gas companies in the industry. Keane's offered services include, but are not limited to, hydraulic fracturing, engineered solutions, wireline technologies, coiled tubing, top hole air rig packages, and cementing.

---

[1] The positions Wireline Supervisor, Wireline Supervisor 2, and Site Supervisor 2 will be referred to collectively as "Wireline Supervisor" throughout.

1

**Exhibit 1**

3. Headquartered in Houston, Texas, Keane has established offices and yards throughout the United States, including yards in Odessa, Texas; Springtown, Texas; Mathis, Texas; Shawnee, Oklahoma; New Stanton, Pennsylvania; Mill Hall, Pennsylvania; Mansfield, Pennsylvania; and Williston, North Dakota.

4. Keane continues to grow its presence in the oil & gas industry. In January 2016, for example, Keane acquired the American fracturing operations of Trican Well Service, thereby trebling its fracturing capacity.[2]

5. In order to offer its completion services, Keane employs several hundreds of oilfield workers throughout the United States.

6. Plaintiffs and similarly situated Salaried Workers work on the oil rigs and typically work 12 hour shifts, 7 days a week for weeks at a time, all while in some of the harshest working conditions.

7. For example, Keane's job postings for the QHSE Coordinator position describes required physical and working conditions as "[f]requent bending, twisting and standing" and "[e]xposure to working outdoors in all-weather conditions (hot, cold dust, dirt, noise, and gas fumes)."[3]

8. Keane's job postings for the Wireline Supervisor position similarly describes physical and working conditions as "[f]requent climbing (stairs, ladders, terrain), [f]requent lifting (70 pounds), [f]requent bending, twisting and standing, [e]xposure to working outdoors in all-weather conditions, [p]otential exposure to chemicals and fumes or gasses . . . [e]xposure to high noise [and] [e]xposure to explosives."[4]

---

[2] Keane Group to Acquire the U.S. Assets of Trican Well Service Ltd., Press Release, *available at* (http://keanegrp.com/2016/01/keane-group-to-acquire-the-u-s-assets-of-trican-well-service-ltd/) (last accessed Nov. 8, 2016).
[3] *See* QHSE Coordinator Job Posting, Keane Current Openings, (*available at* https://workforcenow.adp.com/jobs/apply/posting.html?client=keanesons) (last accessed Nov. 9, 2016).
[4] *See* Wireline Supervisor Job Posting, Keane Current Openings, (*available at* https://workforcenow.adp.com/jobs/apply/posting.html?client=keanesons#) (last accessed Nov. 14, 2016).

9.      In order to avoid paying QHSE Coordinators, Wireline Supervisors and other similar Salaried Workers overtime for hours worked in excess of 40 per workweek, Defendants uniformly misclassified them as exempt from the overtime provisions of the Fair Labor Standards Act § 201 *et seq.* ("FLSA").

10.     Despite this classification, Plaintiffs and similarly situated Salaried Workers have non-exempt primary duties.

11.     In this regard, QHSE Coordinators, the first level of employees in Keane's safety services, have primary duties that involve assisting rigging up and rigging down oilfield equipment, hauling iron, hauling trailers, setting up chains at a job site, picking up supplies, cleaning up the job site, mixing Gatorade and refilling water, checking shower trailers, and completing routine client/company checklists.

12.     As means of another example, Wireline Supervisors have non-exempt primary duties that involve operating the wireline truck's winch, lowering tools down the well, setting wireline plugs, and completing route client/company checklists.

13.     As such, QHSE Coordinators, Wireline Supervisors, and other similarly situated Salaried Workers are non-exempt employees under the FLSA.

14.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former Salaried Workers who elect to opt-in to this action pursuant to the FLSA, and specifically, the collective action provision of 29 U.S.C. § 216(b) to remedy violations of the wage-and-hour provisions of the FLSA by Keane that has deprived Plaintiffs and similarly situated employees of their lawfully earned wages.

15.     Plaintiff Hickson and Wilkins also bring this action on behalf of themselves and similarly situated Salaried Workers in Pennsylvania pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the Pennsylvania Minimum Wage Act ("PMWA").

3

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction under 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331(a), 1332(a), and/or pursuant to 28 U.S.C. § 1367.

17.     The proposed collective action includes a total number of plaintiffs in excess of 100.

18.     Venue is proper in the Southern District of Texas because Defendants have their corporate headquarters based in this District and perform business in this District.

## PARTIES

19.     Tony Hickson ("Hickson") is an adult individual who is a resident of the State of Texas.

20.     Hickson was employed by Keane as a QHSE Coordinator from approximately April 2014 through November 4, 2016.

21.     At all relevant times, Hickson was an "employee" of Keane as defined by the FLSA and the PMWA.

22.     At all relevant times, Keane was Hickson's "employer" as defined in the FLSA and the PMWA.

23.     A written consent form for Hickson was filed with this Collective Action Complaint on December 27, 2016 (ECF No. 1-1).

**Larry Villa**

24.     Larry Villa ("Villa") is an adult individual who is a resident of the State of Texas.

25.     Villa was employed by Keane as a Wireline Supervisor / Wireline Supervisor 2 from approximately November 2015 through October 2016.

26.     At all relevant times, Plaintiff was an "employee" of Keane as defined by the FLSA.

27.     At all relevant times, Keane was Plaintiff's "employer" as defined in the FLSA.

4

28. A written consent form for Villa was filed with this Collective Action Complaint on December 27, 2016 (ECF No. 1-2).

**Christopher Wilkins**

29. Christopher Wilkins ("Wilkins") is an adult individual who is a resident of the State of Arizona.

30. Wilkins has been employed by Keane as a Wireline Supervisor / Site Supervisor 2 from approximately December 2015 through the present.

31. At all relevant times, Plaintiff was an "employee" of Keane as defined by the FLSA.

32. At all relevant times, Keane was Plaintiff's "employer" as defined in the FLSA and the PMWA.

33. A written consent form for Villa was filed on January 20, 2017 (ECF No. 8).

## DEFENDANTS

34. Defendants jointly employed Plaintiffs and similarly situated employees at all times relevant.

35. Each Defendant has had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

36. Defendants are part of a single integrated enterprise that has jointly employed Plaintiffs and similarly situated employees at all times relevant.

37. During all relevant times, Defendants' operations are interrelated and unified.

38. During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the PMWA.

**Keane Group Holdings, LLC**

39. Together with the other Defendants, Keane Group Holdings, LLC ("Keane Group") has co-owned and/or co-operated all Keane corporations and work sites throughout the United States during the relevant time period.

40. Keane Group is a foreign limited liability company organized and existing under the laws of Delaware.

41. Keane Group identifies its mailing address as 11200 Westheimer Road, Suite 900, Houston, Texas 77042, Keane's corporate headquarters.

42. At all relevant times, Keane Group has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

43. Keane applies the same employment policies, practices, and procedures to all Salaried Workers at their locations throughout the United States.

44. At all times relevant, Keane has had an annual gross volume of sales in excess of $100,000,000.

**Keane Frac TX, LLC**

45. Together with the other Defendants, Keane Frac TX, LLC ("Keane Frac TX") has co-owned and/or co-operated all Keane corporations and work sites throughout the United States during the relevant time period.

46. Keane Frac TX is a foreign limited liability company organized and existing under the laws of Delaware.

47. Keane Frac TX identifies its mailing address as 11200 Westheimer Road, Suite 900, Houston, Texas 77042, Keane's corporate headquarters.

48. At all relevant times, Keane Frac TX has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining,

timekeeping, payroll, and other employment practices. In this regard, Hickson and Villa receives pay statements that bore Keane Frac TX as the payor.

49. Keane Frac TX applies the same employment policies, practices, and procedures to all Salaried Workers at their locations throughout the United States.

50. At all times relevant, Keane Frac TX has had an annual gross volume of sales in excess of $500,000.

**Keane Frac, LP**

51. Together with the other Defendants, Keane Frac, LP has co-owned and/or co-operated all Keane corporations and work sites throughout the United States during the relevant time period.

52. Keane Frac, LP is a foreign limited partnership organized and existing under the laws of Pennsylvania.

53. Keane Frac, LP identifies its mailing address as 11200 Westheimer Road, Suite 900, Houston, Texas 77042, Keane's corporate headquarters.

54. It lists co-defendant Keane Frac, LP as its general partner on the State of Pennsylvania corporation records, with a mailing address of 101 Keane Road, Lewis Run, Pennsylvania 16738.

55. At all relevant times, Keane Frac, LP has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

56. Keane Frac, LP applies the same employment policies, practices, and procedures to all Salaried Workers at their locations throughout the United States.

57. At all times relevant, Keane Frac, LP has had an annual gross volume of sales in excess of $500,000.

**Keane Frac GP LLC**

58. Together with the other Defendants, Keane Frac GP LLC has co-owned and/or co-operated all Keane corporations and work sites throughout the United States during the relevant time period.

59. Keane Frac GP LLC is a foreign limited liability company organized and existing under the laws of Delaware.

60. Keane Frac GP LLC identifies its mailing address as 11200 Westheimer Road, Suite 900, Houston, Texas 77042, Keane's corporate headquarters.

61. At all relevant times, Keane Frac GP LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

62. Keane Frac GP LLC applies the same employment policies, practices, and procedures to all Salaried Workers at their locations throughout the United States.

63. At all times relevant, Keane Frac GP LLC has had an annual gross volume of sales in excess of $500,000.

**Keane Frac ND, LLC**

64. Together with the other Defendants, Keane Frac ND, LLC ("Keane Frac ND") has co-owned and/or co-operated all Keane corporations and work sites throughout the United States during the relevant time period.

65. Keane Frac ND is a foreign limited liability company organized and existing under the laws of Delaware.

66. Keane Frac ND identifies its mailing address as 11200 Westheimer Road, Suite 900, Houston, Texas 77042, Keane's corporate headquarters.

67. At all relevant times, Keane Frac ND has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

68. Keane Frac ND applies the same employment policies, practices, and procedures to all Salaried Workers at their locations throughout the United States.

69. At all times relevant, Keane Frac ND has had an annual gross volume of sales in excess of $500,000.

## FACTS

70. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Tony Hickson**

71. Hickson was employed by Keane as a QHSE Coordinator from approximately February 2014 to November 4, 2016. Hickson was primarily assigned to Keane's Odessa, Texas territory during his employment. From approximately November 2015 through February 2016, Hickson was assigned to Keane's territory in New Stanton, Pennsylvania. Beginning in approximately March 2016, Hickson was again reassigned to Keane's Texas operations, and assigned to both Keane's Odessa, Texas territory and Dallas/Ft. Worth territory.

72. During the course of his employment, Hickson regularly worked over 40 hours per week. In this regard, Hickson generally worked at least 12 hours per day for 14 days at a time, generally followed by 7 days off. In instances where Hickson was assigned to job sites in or around the Fort Worth/Dallas area, he worked at least 12 hour shifts generally Monday through Saturday, without any weeks off.

73. Despite regularly working over 40 hours per workweek, Defendants paid Hickson with a salary, regardless of the number of hours worked.

74. Hickson's primary duties as a QHSE Coordinator are related to the operating and monitoring of oil wells.

75. In this regard, his primary duties were largely manual in nature, requiring him to perform physical work, such as assisting rigging up and rigging down oilfield equipment, hauling iron, hauling trailers, setting up chains at a job site, picking up supplies, cleaning up the job site, mixing Gatorade and refilling water, checking shower trailers, and completing routine client/company checklists.

76. Hickson was required to perform his job in strict compliance with Defendants' company policies.

77. Defendants prohibit their employees from varying outside of the predetermined job duties and checklists.

78. Hickson, as with the other non-exempt workers at a job site, was required to wear personal protective equipment ("PPE"), as his job is dangerous and constantly exposed him to various hazards, such as chemicals, sharp objects, and volatile working conditions. In addition, Hickson, as with other non-exempt workers, is required to work throughout all weather conditions.

79. As such, Hickson's primary job duties are non-exempt duties under the FLSA.

80. Upon information and belief, Defendants did not keep accurate records of hours worked by Hickson and similarly situated employees.

**Larry Villa**

81. Villa was employed by Keane as a Wireline Supervisor assigned to Keane's Odessa, Texas territory from approximately November 2015 to October 4, 2016.

82. During the course of his employment, Villa regularly worked over 40 hours per week. In this regard, Villa generally worked at least 12 hours per day for 14 days at a time, generally followed by 7 days off.

83. Despite regularly working over 40 hours per workweek, Defendants paid Villa with a salary and job bonus, regardless of the number of hours worked.

84. Villa's primary duties as a Wireline Supervisor are related to the operating and monitoring of wireline operations. In this regard, his primary duties as a Wireline Supervisor were largely manual in nature, were the type of work Keane performs for its customers, and consisted of traveling to and from well sites and operating the wireline truck's winch and completing routine client/company checklists.

85. Villa was required to perform his job in strict compliance with Defendants' company policies. Defendants prohibit their employees from varying outside of the predetermined job duties and checklists.

86. Villa, as with the other non-exempt workers at a job site, was required to wear personal protective equipment ("PPE"), as his job is dangerous and constantly exposed him to various hazards, such as chemicals, sharp objects, and volatile working conditions. In addition, Villa, as with other non-exempt workers, is required to work throughout all weather conditions.

87. As such, Villa's primary job duties are non-exempt duties under the FLSA.

88. Villa's primary job duties are an essential part of the services Keane performs for its customers.

89. Upon information and belief, Defendants did not keep accurate records of hours worked by Villa and similarly situated employees.

**Christopher Wilkins**

90. Wilkins has been employed by Keane as a Wireline Supervisor / Site Supervisor 2 assigned to several of Keane's territories from approximately February 2015 to the present. Wilkins

has been primarily assigned to Keane's Odessa, Texas territory during his employment. In 2015, during the approximate months of February, April, May, June, and September, Keane assigned Wilkins to its yards located in Mansfield and New Stanton, Pennsylvania.

91. During the course of his employment, Wilkins regularly worked over 40 hours per week. In this regard, Wilkins generally worked at least 12 hours per day for 14 days at a time, generally followed by 7 days off.

92. Despite regularly working over 40 hours per workweek, Defendants paid Wilkins with a salary and job bonus, regardless of the number of hours worked.

93. Wilkins' primary duties as a Wireline Supervisor / Site Supervisor 2 are related to the operating and monitoring of wireline operations. In this regard, his primary duties as a Wireline Supervisor / Site Supervisor 2 were largely manual in nature, were the type of work Keane performs for its customers, and consisted of traveling to and from well sites and operating the wireline truck's winch and completing routine client/company checklists.

94. Wilkins was required to perform his job in strict compliance with Defendants' company policies. Defendants prohibit their employees from varying outside of the predetermined job duties and checklists.

95. Wilkins, as with the other non-exempt workers at a job site, was required to wear personal protective equipment ("PPE"), as his job is dangerous and constantly exposed him to various hazards, such as chemicals, sharp objects, and volatile working conditions. In addition, Wilkins, as with other non-exempt workers, is required to work throughout all weather conditions.

96. As such, Wilkins' primary job duties are non-exempt duties under the FLSA.

97. Wilkins' primary job duties are an essential part of the services Keane performs for its customers.

98. Upon information and belief, Defendants did not keep accurate records of hours worked by Wilkins and similarly situated employees.

## COLLECTIVE/CLASS ALLEGATIONS

99. Plaintiffs bring the First Cause of Action, a FLSA claim, on behalf of themselves and all similarly situated persons who work or have worked as QHSE Coordinators, Wireline Supervisors, and other similarly situated Salaried Workers for Keane nationwide who elect to opt-in to this action (the "FLSA Collective").[5]

100. Plaintiffs Hickson and Wilkins bring the Second Cause of Action, an overtime claim under the PMWA, on behalf of themselves and all similarly situated persons who have worked as QHSE Coordinators, Wireline Supervisors, and other similarly situated Salaried Workers for Keane in Pennsylvania (the "Pennsylvania Class").[6]

101. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective.

102. Consistent with Defendants' policies and patterns or practices, Plaintiffs and the FLSA Collective were not paid the proper premium overtime compensation when they worked beyond 40 hours in a workweek.

103. All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

---

[5] The FLSA Collective excludes those individuals covered by *Meals v. Keane Frac GP, LLC,* Case No. 2:16-cv-1674-NBF (W.D. Pa.).
[6] The Pennsylvania Class excludes those individuals covered by *Meals v. Keane Frac GP, LLC,* Case No. 2:16-cv-1674-NBF (W.D. Pa.).

104. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a. willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek; and

   b. willfully failing to record all of the time that their employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

105. Defendants' unlawful conduct, as described in this Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by misclassifying employees.

106. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

107. Plaintiffs and the FLSA Collective perform or performed the same primary duties.

108. There are many similarly situated current and former Salaried Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

109. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

110. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

111. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of FLSA Collective.

112. Defendants failed to pay Plaintiffs and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay, which includes all total earnings per workweek, for all hours worked beyond 40 per workweek.

113. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective. As such, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

114. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
**Pennsylvania Minimum Wage Act – Overtime Wages**
**(Brought on Behalf of Plaintiffs Hickson and Wilkins and the Pennsylvania Class)**

115. Plaintiffs Hickson and Wilkins reallege and incorporate by reference all allegations in all preceding paragraphs.

116. The overtime provisions of the PMWA and its supporting regulations apply to Defendants, and protect Plaintiffs Hickson, Wilkins, and the Pennsylvania Class.

117. Defendants failed to pay Plaintiffs Hickson, Wilkins, and the Pennsylvania Class the premium overtime wages to which they were entitled under the PMWA – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

118. Through their knowing or intentional failure to pay Plaintiffs Hickson, Wilkins, and the Rule 23 Class the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Defendants willfully violated the PMWA, 43 P.S. § 333.104(c).

119. Due to Defendants' willful violations of the PMWA, Plaintiffs Hickson, Wilkins, and the Pennsylvania Class are entitled to recover from Defendants their unpaid overtime wages and reasonable attorneys' fees and costs pursuant to the PMWA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of the FLSA Collective and the Pennsylvania Class, respectfully requests that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all QHSE Coordinators, Wireline Supervisors, and other similarly situated Salaried Workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Keane nationwide. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid overtime pay and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiffs Hickson and Wilkins as representatives of the Pennsylvania Class and counsel of record as Class Counsel;

E. Unpaid overtime wages permitted by law pursuant to the PMWA;

   F. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA, as well as under the relevant state laws.

   G. Reasonable attorneys' fees and costs of the action; and

   H. Such other relief as this Court shall deem just and proper.

Dated: May 8, 2017       **Respectfully submitted,**

            **/s/ Rex Burch**
            _____

            Richard J. (Rex) Burch
            **BRUCKNER BURCH PLLC**
            8 Greenway Plaza #1500
            Houston, Texas 77046
            Telephone: (713) 877-8788

            **FITAPELLI & SCHAFFER, LLP**
            Joseph A. Fitapelli, *pro hac vice*
            Armando A. Ortiz, *pro hac vice*
            28 Liberty Street, 30th Floor
            New York, New York 10005
            Telephone: (212) 300-0375

            *Attorneys for the Plaintiffs and Putative Class*

## CERTIFICATE OF SERVICE

 This document was served on all parties via the Court's Electronic Filing System (ECF) on May 8, 2017 in accordance with the Federal and Local Rules of Civil Procedure.

            **/s/ Rex Burch**
            _____

            Richard J. (Rex) Burch